**UNITED STATES of America, Appellee,**

v.

**Jonathan PALOZIE, Defendant–Appellant.**

**No. 1217, Docket 98–1384.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1999.

Decided Jan. 29, 1999.

Gerald E. Bodell, New York, N.Y. (Craig A. Raabe, Scott E. Perry, Robinson & Cole LLP, Hartford, CT, on the brief), for Defendant–Appellant.

Jeffrey A. Mayer, Assistant United States Attorney, New Haven, CT (Stephen C. Robinson, United States Attorney, District of Connecticut, on the brief), for Appellee.

Before : JACOBS and SOTOMAYOR, Circuit Judges, and SAND, District Judge.*

## PER CURIAM:

Defendant Jonathan Palozie was convicted by a jury in the United States District Court for the District of Connecticut (Covello, Ch. J.) for possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (1994), which provides, in relevant part, that it is unlawful for any person "who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or *affecting commerce,* any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (emphasis added). The jury was charged that the government could carry its burden with respect to the interstate commerce element of the possession offense by, among other things, proving beyond a reasonable doubt that "the firearm allegedly possessed by the Defendant had at some time previously traveled across a state line."

On appeal, Palozie raises a score of issues, most of which are insubstantial. We affirm

as to all issues, and write only to address the defendant's claim that, with respect to § 922(g)(1)'s "affecting commerce" element, the district court erred by not instructing the jury that in order to convict, it had to find that his possession of the firearm had a "substantial effect" on interstate commerce.

## DISCUSSION

In *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 1969, 52 L.Ed.2d 582 (1977), the Supreme Court—construing a statutory predecessor of § 922(g)(1)—concluded that the prosecution could carry its burden of showing the requisite interstate commerce element by proving beyond a reasonable doubt that the firearm previously had traveled in interstate commerce. Notwithstanding the holding in *Scarborough,* the defendant contends that the district court should have informed the jury that with respect to the interstate commerce element of § 922(g)(1), the prosecution (having failed, according to Palozie, to offer evidence that the firearm was "in" commerce) was required to establish that the possession of the firearm had a "substantial effect" on interstate commerce. In support, the defendant attempts to distinguish § 922(g)(1) from its predecessor provision.

*Scarborough* construed Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, 236–37 (1968), which made it illegal, among other things, for a felon to " 'receive[ ], possess[ ], or transport[ ] *in commerce or affecting commerce* ... any firearm.' " *Scarborough,* 431 U.S. at 564, 97 S.Ct. at 1964 (quoting Title VII) (emphasis added). The defendant in *Scarborough* argued that this wording meant that the interstate commerce nexus had to be " 'contemporaneous' with the possession" of the firearm, and that Title VII therefore proscribed " 'only crimes with a present connection to commerce.' " *Id.* at 568, 97 S.Ct. at 1966. The defendant compared the wording of Title VII with the wording in Title IV of the same Act,[1] which made it illegal for a

---

* The Honorable Leonard B. Sand of the United States District Court for the Southern District of New York, sitting by designation.

1. "The provisions of Title IV of the Omnibus Crime Control Act were re-enacted later that year without relevant change in the Gun Control

convicted felon to receive a firearm that had "'been shipped or transported in interstate or foreign commerce.'" *Id.* at 569, 97 S.Ct. at 1966 (quoting Title IV). Scarborough argued that the present perfect tense in Title IV demonstrated that Congress, if it chose, could specify when a possession offense is based on a firearm that "ha[s] previously traveled in commerce," and that Congress's "failure to use that language in [Title VII] must mean that it wanted to reach only ongoing transactions." *Id.*

The Supreme Court saw as the "essential difficulty" with Scarborough's position that the comparison of the two statutes was "not very meaningful." *Id.* The Court attributed the difference in wording to the quality of drafting: "Title VII was a last-minute amendment to the Omnibus Crime Control Act enacted hastily with little discussion and no hearings," *id.*, while Title IV was "a carefully constructed package of gun control legislation" in which tenses were "chosen with care," *id.* at 570, 97 S.Ct. at 1966. Relying in part on the fact that Title VII contained the term "affecting commerce," the Court saw "no indication" that in passing Title VII, "Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." *Id.* at 575, 97 S.Ct. at 1969.

As Palozie contends, the statute he was convicted of violating differs from the statute at issue in *Scarborough*. The current § 922(g)(1)—a successor to the statute construed in *Scarborough*—resulted from the passage, in 1986, of the Firearm Owners' Protection Act, Pub.L. No. 99–308, §§ 102, 104(b), 100 Stat. 449, 451–53, 459 (1986). Even after passage of that Act, however, this Court has invoked the holding in *Scarborough* to rule that under § 922(g)(1), "'proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce.'" *United States v. Sorrentino*, 72 F.3d 294, 296 (2d Cir.1995) (quoting *Scarborough*, 431 U.S. at 564, 97 S.Ct. at 1964); *see also United States v. Garcia*, 94 F.3d 57, 65 (2d Cir.1996) ("[I]t is

sufficient to sustain a conviction under § 922(g) that the government prove beyond a reasonable doubt that the firearm previously had traveled in interstate commerce.").

Cases such as *Sorrentino* and *Garcia* notwithstanding, the defendant advances the new argument that because the wording of Title VII and Title IV were brought together and restated when Congress adopted the Firearm Owners' Protection Act, Congress "obliterated the reasoning in *Scarborough* that the differences in verb tenses and language between the 'possession provision,' *i.e.*, the former Title VII, and the 'receipt provision,' *i.e.*, the former Title IV, were simply the result of a hasty and careless legislative process."

Section 922(g) (as noted above) makes it illegal for certain unqualified persons "to ship or transport in interstate or foreign commerce, or possess *in or affecting* commerce, any firearm or ammunition; or to receive any firearm or ammunition *which has been shipped or transported* in interstate or foreign commerce." 18 U.S.C. § 922(g) (1994)(emphasis added). Palozie maintains that the adjacent use of different wordings indicates congressional intent to give each phrase a distinct meaning. It is therefore evident, to Palozie, "that the phrase 'affecting' interstate commerce for the purpose of § 922(g) requires more than the *de minimis* nexus of a single interstate transfer of the firearm."

We disagree. When Congress used the term "affecting commerce" in the Firearm Owners' Protection Act, it used a term that had been authoritatively construed. The later substitution of *new* language might have suggested an intent to achieve a change in substance; but the use of the *same* language—in essentially the same context—carried with it the meaning that the Supreme Court had previously given it. *See Lorillard v. Pons*, 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) ("[W]here ... Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the inter-

Act of 1968, 82 Stat. 1213." *Scarborough,* 431 U.S. at 569 n. 8, 97 S.Ct. at 1966 n. 8.

pretation given to the incorporated law, at least insofar as it affects the new statute.").

The legislative history of the Firearm Owners' Protection Act confirms what the drafting shows: the intent of Congress was to combine into one section Titles IV and VII of the Omnibus Crime Control and Safe Streets Act.[2] There is no indication that, in passing the Act, Congress was seeking to eliminate the authoritative effect of *Scarborough*'s interpretation of the phrase "affecting commerce," which is retained in the new statute. The House Judiciary Committee Report recites that the new § 922(g) would apply to the possession of a firearm whose only connection to commerce was the previous crossing of a state line. *See* H.R.Rep. No. 99–495, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1349 ("Persons are now unqualified from receiving, possessing or transporting firearms in interstate or foreign commerce or firearms which have been shipped or transported in interstate or foreign commerce if they ... have been ... convicted of a felony....").

We conclude that in order to satisfy the interstate commerce element of § 922(g), the prosecution need only make the *de minimis* showing that the possessed firearm previously traveled in interstate commerce.

## CONCLUSION

We have carefully considered the defendant's remaining arguments on appeal, and we find them to be without merit. The judgment of the district court is affirmed.

---

2. *See* H.R.Rep. No. 99–495, at 23 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1349 ("This section also combines in one section (18 U.S.C. 922(g)) all of the offenses related *to* sale of firearms to unqualified persons, and offenses of receipt, possession and transport of firearms *by* unqualified persons (or their employees) now divided between [Title IV of the Omnibus Crime Control and Safe Streets Act] (18 U.S.C. § 922(d), (g) and (h)) and Title VII of the Omnibus Crime Control and Safe Streets Act (18 U.S.C. 1202(a) and (b)[) ].").