**Melvin Leon WRIGHT, Plaintiff,**

v.

**Harold DEE, Charles Greiner, and Glenn Goord, Defendants.**

**No. 98 Civ. 1284(DLC).**

United States District Court,
S.D. New York.

May 28, 1999.

---

Melvin Leon Wright, Green Haven Correctional Facility, Stormville, NY, pro se.

Elliot Spitzer, Attorney General, Caryn A. Rosencrantz, Assistant Attorney General, New York City, for defendants.

## OPINION and ORDER

COTE, District Judge.

Plaintiff Melvin Wright ("Wright") brings this complaint pro se pursuant to 42 U.S.C. § 1983 ("Section 1983"). The defendants move to dismiss. For the reasons discussed below the motion is granted in part and denied in part.

## Background

The facts are set forth below as alleged in the complaint, the amended complaint, and the opposition to the motion to dismiss.[1] Wright was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in February 1997, when his right shoulder was operated on at St. Agnes Hospital. On February 11, 1997, while recovering from surgery and still under the effects of anesthesia, Wright accidently grabbed the hand of nurse Ann Conboy ("Conboy") and injured her. The following day, Wright was discharged and returned to Sing Sing, where he was taken to the medical unit and told by Corrections Officers Bishop and D. Lavarnway[2] ("Lavarnway") to strip for photographs that were to be taken "due to the unusual incident that took place at St. Agnes Hospital." Wright told the officers that he could not move his right arm to remove his shirt because he was not fully healed from the surgery. Using profanity, Lavarnway said that he did not care whether Wright could move his arm because he was told by Officer Townes ("Townes") that Wright had called Townes "a bitch." Lavarnway threatened to remove Wright's clothes forcibly. With the assistance of another inmate, Wright removed his clothing.

---

1. See *Boguslavsky v. Kaplan,* 159 F.3d 715, 719 (2d Cir.1998).

2. The parties do not provide first names for the corrections officers named in the complaint unless otherwise noted.

On February 13, 1997, a misbehavior report against Wright was issued stemming from the incident at St. Agnes. On February 14, 1997, Wright was interviewed by a Mr. King ("King"), who was assigned to assist Wright with his disciplinary hearing. Wright asked King to interview another inmate who was in the hospital room with Wright when Wright grabbed Conboy's arm, the anesthesiologist who administered the anesthesia to Wright, and a doctor at Sing Sing who could testify about the effects of anesthesia. Wright also asked for general information about anesthesia. Approximately one hour later, King reported to Wright that he had not identified the witnesses. King never provided any information for Wright about anesthesia.

On February 18, 1997, the plaintiff appeared before Harold Dee ("Dee") for a disciplinary hearing, and informed Dee that King had not provided the assistance that Wright had requested. Dee refused Wright's request to call witnesses on his behalf, and instead called Conboy and the co-authors of the misbehavior report, Townes and B. Kasten. Because Conboy was unavailable, the hearing was adjourned until February 25, 1997.

On February 25, the hearing was again adjourned, and Wright's request that the reason for the adjournment be "put on the record" was denied. On the way back to his cell, Wright was kicked and punched by Officers Lavarnway, Reich, Flores, and Murphy, along with Sergeant Wisnat ("Wisnat"), while in a "secluded by-pass tunnel." Wright was then taken to the Sing Sing emergency room, and the assault continued in the back room of the nurses' station. Wright suffered severe injuries to his back, to his right shoulder—where he was still recovering from surgery—and to his thumb when Lavarnway "bent it backward to his left wrist and held

it there causing severe pain." When a nurse arrived, the nurse was told by Wisnat that Wright had "no injuries." The nurse, who wrote on the medical form that Wright had "no injuries" refused to give Wright his name and ignored Wright's request to see a doctor. Later in the day Wright returned to the emergency room complaining of "extreme pain," but was denied medical treatment because his medical form indicated that he had no injuries.

On March 2, 1997, Wright was notified that he had been found guilty in a disciplinary hearing which had proceeded in his absence. Wright was given a penalty of thirty-six months in the special housing unit ("SHU"), a thirty-six month loss of good time credits, and loss of special privileges "including clothing, property, and permits." On appeal, Commissioner Glenn Goord ("Goord") reduced Wright's confinement to the SHU to twenty-four months and restored his privileges in a decision rendered on May 7, 1997. Wright challenged Goord's decision in an Article 78 proceeding, and on March 6, 1998, the disciplinary rulings against Wright were overturned. By the time of the Article 78 ruling, Wright had spent twelve months in the SHU.[3]

Wright filed this action on February 23, 1998, claiming that Dee, Goord, and Superintendent Charles Greiner ("Greiner") had violated his rights under Section 1983. Wright submitted an amended complaint on October 23, 1998, adding Wisnat, Flores, Lavarnway, Murphy, and Reich as defendants. In both the complaint and amended complaint, Wright seeks compensatory and punitive damages and an injunction returning him to Sing Sing.[4] As of the date of this Opinion and Order, the United States Marshals Service—which is executing service on Wright's behalf—has not executed service on Wisnat. The defendants move to dismiss the complaint

---

3. This computation is taken from the Article 78 Opinion.

4. In a letter received by the Court on April 1, 1999, Wright explained that he would prefer to be incarcerated at Sing Sing to be closer to his family.

pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.

**Standard**

A court may dismiss an action pursuant to Rule 12(b)(1), Fed.R.Civ.P., if the Court does not have subject matter jurisdiction. A complaint will be dismissed under Rule 12(b)(6) if it does not state a claim upon which relief may be granted. Under Rules 12(b)(1) and 12(b)(6), the action will not be dismissed unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which will entitle him to relief." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997) (internal quotations omitted). In considering the motion, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Id.* An action will be dismissed under Rule 12(b)(5) for insufficiency of service of process.

When a plaintiff is proceeding *pro se,* the court must liberally construe the complaint. *See, e.g., Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997). "A complaint should not be dismissed simply because a plaintiff is unlikely to succeed on the merits." *Baker v. Cuomo,* 58 F.3d 814, 818 (2d Cir.1995).

**Discussion**

The Court construes the pleadings to allege that the plaintiff was (1) subjected to excessive force, (2) denied medical treatment, and (3) denied procedural due process.[5] Section 1983 provides a mechanism through which a violation of a constitutional right may be remedied and states that

> Every person who, under color of any statutes, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to deprivation of any rights, privileges, or immunities secured

by the Constitution and laws shall be liable to the party injured.

42 U.S.C. § 1983.

*1. Excessive force*

■ Wright complains that he was subjected to excessive force when he was beaten by defendants Lavarnway, Reich, Flores, and Murphy and Wisnat. Defendants assert that they are entitled to qualified immunity. Qualified immunity protects state actors sued in their individual capacity from a suit for damages. *Lewis v. Cowen,* 165 F.3d 154, 166 (2d Cir.1999). A state actor is qualifiedly immune where his actions did not violate rights that a reasonable person would have known were clearly established. *Stuto v. Fleishman,* 164 F.3d 820, 825 (2d Cir.1999). It was clearly established before February 25, 1997, the date of the alleged beatings, that a prison inmate has an Eighth Amendment right to be free from the use of excessive force. *See Hudson v. McMillian,* 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Boddie,* 105 F.3d at 862. Force is excessive when it is applied "maliciously and sadistically to cause harm," and not "in a good faith effort to restore discipline." *Boddie,* 105 F.3d at 862. Wright complains that the corrections officers beat him without purpose in February 1997. Consequently, qualified immunity does not protect the defendants.

■ Defendants next assert that Dee, Goord, and Greiner were not personally involved in the attack on Wright and cannot be held liable. A defendant will be liable under Section 1983 only when he is personally involved in the violation. *Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997); *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Personal involvement of a supervisory defendant may be shown by evidence that the defendant (1) directly participated in the violation, (2) failed to remedy the wrong after being informed of the wrong through a report or appeal, (3) created a policy or custom under which

---

**5.** Wright also alleged a violation of the Fourth

Amendment but has withdrawn the claim.

unconstitutional practices occurred, or allowed such a policy or custom to continue, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon,* 58 F.3d at 873. Liberally construing Wright's complaint, Wright does not allege personal involvement by Goord, Greiner, or Dee in the beating incident. The excessive force claim against these defendants is dismissed. Defendants next argue that Wright's excessive force claim must be dismissed for failure to exhaust administrative remedies under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA, which became effective on April 26, 1996, provides that:

> [n]o action shall be brought *with respect to prison conditions* under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted.*

42 U.S.C. § 1997e(a). (Emphasis supplied.) *See Salahuddin v. Mead,* 174 F.3d 271, 274 (2d Cir.1999). Courts are divided over whether the PLRA's exhaustion requirements apply to excessive force claims. *Compare Carter v. Kiernan,* No. 98 Civ. 2664(JGK), 1999 WL 14014 at *2–5 (S.D.N.Y. Jan.14, 1999) (collecting cases); *Baskerville v. Goord,* No. 97 Civ. 6413(BSJ), 1998 WL 778396 at * 2–5 (S.D.N.Y. Nov.5, 1998) (collecting cases); *White v. Fauver,* 19 F.Supp.2d 305, 312–16 (D.N.J.1998) *with Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 887–92 (S.D.N.Y.1998) (collecting cases). For the *reasons* set forth in *Carter,* 1999 WL 14014 and *Baskerville,* 1998 WL 778396, this Court agrees that an excessive force claim does not address "prison conditions"

and exhaustion of administrative remedies is, consequently, not required.[7]

## 2. Deprivation of medical care

◼ Wright next alleges that he was denied medical care on two occasions after he was beaten. Defendants assert that they have qualified immunity protecting them from suit. It was clearly established by February 25, 1997, that prison officials may not be deliberately indifferent to an inmate's a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Wright alleges that he suffered serious injuries and pain as a result of the beating by the corrections officers and that the officers and a nurse refused his request for medical assistance. Wright, therefore, states a claim for violation of his right not to be deliberately denied medical treatment, *see Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998), and the prison officials are not protected by qualified immunity.

Certain defendants also move to dismiss on the ground that the pleadings do not allege their personal involvement. Wright's complaint alleges that only Wisnat, Lavarnway, and an unnamed nurse were involved in the alleged deprivation of medical care. Accordingly, the claim is dismissed with respect to all other defendants for lack of personal involvement.

◼ Finally, defendants assert that the claim must be dismissed for failure to exhaust administrative remedies pursuant to the PLRA. As noted, the PLRA requires a prisoner to exhaust all available remedies before bringing an action regarding "prison conditions." 42 U.S.C. § 1997e(a). As discussed in those cases addressing the PLRA exhaustion requirement in the context of excessive force claims, the statute does not define "prison conditions." *See Baskerville,* 1998 WL 778396 at * 2–5; *White,* 19 F.Supp.2d at 312–16. The con-

---

7. Courts are also split on whether an action for damages may proceed without exhaustion when damages are unavailable through a prison's administrative proceedings. *See Carter, 1999 WL 14014 at *5 n. 2; Baskerville, 1998 WL 778396 at *2 n. 5. Having found the exhaustion requirement to be inapplicable, the Court declines to reach this issue.*

tent of this term can be found in Supreme Court jurisprudence. For the purpose of determining the appropriate Eighth Amendment standard to be applied to claims arising from a deprivation of medical care, such claims are grouped with other claims addressed to "prison conditions." In *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Supreme Court held that both prison-wide deprivations and an individual inmate's deprivation of medical care were actions addressing "conditions of confinement." The Court rejected the petitioner's argument—endorsed by the four Justices in concurrence—that inadequate medical care inflicted on an individual inmate is distinguishable from that inflicted on all inmates. *Id.* at 299 n. 1, 111 S.Ct. 2321. Accordingly, the Court held that the Eighth Amendment's deliberate indifference standard, developed in the context of claims brought by individual inmates alleging inadequate medical care, applied as well to other complaints regarding the conditions of confinement. *Id.* at 303, 111 S.Ct. 2321.

> Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection is afforded against other inmates.

*Id. See also Jenkins v. Haubert*, No. 98–2408, slip op. ——, —— (2d Cir. May 26, 1999).

Finding that excessive force claims are not suits addressed to the conditions of confinement is entirely consistent with this analysis. Indeed, *Wilson* itself explains that, while medical care is a part of "prison conditions," excessive force is not. According to the Court, while both types of claims arise out of the Eighth Amendment, and require a showing that the offending conduct was "wanton," *id.* at 302, 111 S.Ct. 2321, the meaning of wanton "must be determined with 'due regard for differences in the kind of conduct against which the Eighth Amendment objection is lodged.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Where force is used in response to a prison disturbance, it is done " 'in haste, under pressure' " and must be balanced against the " 'competing institutional concerns for the safety of prison staff or other inmates.' " *Id.* (quoting *Whitley*, 475 U.S. at 320, 106 S.Ct. 1078). Thus, the force is wanton, and excessive, when it is undertaken " 'maliciously and sadistically for the very purpose of causing harm.' " *Id.* (quoting *Whitley*, 475 U.S. at 320–21, 106 S.Ct. 1078). In contrast, prisoners' medical needs do not generally compete with prison officials' other, equally important responsibilities. Wantonness, therefore, is found where the official acts with deliberate indifference, *id.*, a state of mind that requires more than negligence, but less than conduct undertaken for the purpose of inflicting harm. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994). An official acts with deliberate indifference when he " 'knows of and disregards an excessive risk to inmate health and safety.' " *Hathaway*, 37 F.3d at 66 (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970).

Expectations regarding prison confinement serve to distinguish not only the scienter requirement but also the objective component or the level of injury an inmate must show when bringing a claim regarding the use of excessive force and the claim for a deprivation of medical care. In *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), the Supreme Court wrote

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.

A similar analysis applies to medical needs. Because a society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'

In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.

*Hudson*, 503 U.S. at 9, 112 S.Ct. 995 (internal quotations and citations omitted).

Courts may assume that Congress legislates with Supreme Court rulings in mind, *see, e.g., United States v. Palozie*, 166 F.3d 502, 504 (2d Cir.1999) (per curiam) and, therefore, that the PLRA's requirement regarding cases challenging "prison conditions" includes cases alleging a deprivation of medical care. Accordingly, unlike an excessive force claim, an inmate must exhaust available administrative remedies before filing a lawsuit alleging a deprivation of medical care.

■■■ Wright states in his opposition that he exhausted his administrative remedies but does not have the funds in his inmate's account to copy the documents showing a pursuit of those remedies. Defendants do not contest this assertion. In the context of a motion to dismiss, Wright's assertion that he has exhausted his administrative remedies is sufficient to survive review. *See, e.g., Feliciano v. Goord*, No. 97 Civ. 263, 1998 WL 436358 at *2 (S.D.N.Y. July 27, 1998) (Cote, J.) (allegation of exhaustion precluded dismissal of complaint).[8]

### 3. Procedural due process

Wright next alleges that he was denied procedural due process when his disciplinary proceeding was conducted in his absence and without giving him an opportunity to interview witnesses or discover evidence. As a result of the proceeding he was assigned to the SHU for thirty-six months, lost thirty-six months of good time credits, and lost privileges "including clothing, property and permits."

■■■ A prisoner has the right to procedural due process when the deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). A plaintiff must show that the confinement or restraint imposed created an atypical and significant hardship and that the state has granted, through regulation or statute, "a protected liberty interest in remaining free from that confinement or constraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996). To determine whether an atypical and significant hardship has been imposed in a particular case, the district court must generally engage in detailed fact finding "to examine the circumstances of a confinement." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir.1998). *See also Frazier*, 81 F.3d at 317; *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir.1997). The court should consider factors such as the length of prison confinement and the extent to which the conditions of disciplinary segregation differ from other routine prison conditions. *Wright*, 132 F.3d at 136. Wright alleges that he was assigned to the SHU for three years and lost three years of good time credits. The Court cannot say that the disciplinary actions taken against Wright do not, as a matter of law, constitute an atypical and significant hardship. *See, e.g. Lee v. Coughlin*, 26 F.Supp.2d 615, 637 (S.D.N.Y.1998) (Sotomayor, J.) (376 day confinement to the SHU was atypical and significant hardship).

8. Having found Wright to allege exhaustion, it is unnecessary to decide whether the unavailability of damages through administrative proceedings eliminates the need to exhaust under the PLRA.

■ An atypical and significant hardship may be imposed only after an inmate is afforded advance written notice of the charges against him, a written statement by the prison factfinders regarding the evidence against the inmate, and the opportunity to call witnesses and present documentary evidence—when permitting the inmate to do so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff v. McDonnell,* 418 U.S. 539, 563–70, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). *See also Horne v. Coughlin,* 155 F.3d 26, 30 (2d Cir.1998). Wright alleges that he was disciplined even though he was denied the protections set forth in *Wolff,* and therefore, states a claim for a violation of procedural due process.

■ Defendants assert that they are entitled to qualified immunity because it was not clearly established at the time of Wright's disciplinary hearing that assignment to the SHU for three years and the loss of good time credits and certain privileges constituted "atypical and significant hardship." In analyzing whether the defense of qualified immunity may be successfully invoked on a motion to dismiss, the court need look no further than the complaint's allegations regarding the specific procedural protections allegedly denied the plaintiff. If the entitlement to those protections was "clearly established" at the time of the administrative hearing— as they unquestionably were here—then the defense is unavailable. Even in the context of a summary judgment motion, the Court of Appeals has confined itself to examining simply two issues: whether the right to the specific procedural protection was clearly established and whether it was objectively reasonable for an official to believe that his conduct did not violate that right. The Second Circuit found it unnecessary even to discuss, in the context of the proffered qualified immunity defense, whether a liberty interest, as defined in *Sandin,* existed. *Ayers v. Ryan,* 152 F.3d 77, 82–83 (2d Cir.1998) (vacating a grant of

qualified immunity where procedural protections were denied).

■ Defendants next assert that Wright's due process claim must be dismissed against all defendants other than Dee for failure to allege personal involvement. Of the defendants named in the complaint, only Dee is alleged to have been personally involved in depriving Wright of due process. Accordingly, this claim is dismissed against all defendants other than Dee.

■ Defendants also argue that while Wright may seek nominal damages for the due process violation he alleges, his claim for compensatory damages must be dismissed. The PLRA states, in relevant part, that

No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, *for mental or emotional injury suffered while in custody without a prior showing of physical injury.*

42 U.S.C.1997e(e) (emphasis supplied). Wright does not allege a physical injury resulting from the alleged violation of his due process rights, and accordingly, he may not pursue an action for compensatory damages. *See, e.g., Urbanski v. Horn,* No. Civ. A. 97–4647, 1998 WL 661531 at *9 (E.D.Pa. Sept.25, 1998). Defendants do not dispute, however, that Wright may proceed with a claim for nominal damages. *See Carey v. Piphus,* 435 U.S. 247, 248, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (plaintiff is entitled to nominal damages even in the absence of actual compensable injury); *Amato v. City of Saratoga Springs,* 170 F.3d 311, 317 (2d Cir.1999).

*4. Injunctive relief*

■ In addition to damages, Wright seeks an injunction that would return him to Sing Sing. Prison officials have broad discretion to transfer prisoners. *Meriwether v. Coughlin,* 879 F.2d 1037, 1045 (2d Cir.1989) (citing *Meachum v. Fano,* 427 U.S. 215, 228, 96 S.Ct. 2532, 49

L.Ed.2d 451 (1976)). A prisoner may not, however, be transferred solely in retaliation for the exercise of constitutional rights. *Id.* at 1046. Wright does not allege that he was transferred out of Sing Sing in retaliation for the exercise of his constitutional rights. Wright's claim for injunctive relief is dismissed.

## Conclusion

The defendants' motion to dismiss is granted in part and denied in part. The plaintiff's claim alleging the use of excessive force may proceed against defendants Wisnat, Flores, Lavarnway, Murphy, and Reich. The claim alleging a deprivation of medical care may proceed against Wisnat and Lavarnway. The claim for a violation of procedural due process may proceed against Dee for nominal damages. The request for injunctive relief is dismissed. A scheduling order issued with this Opinion and Order shall govern further pretrial proceedings.

SO ORDERED