**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Darnell HENDERSON,**
**Defendant-Appellant.**

**No. 81–1446.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 5, 1982.*

Decided July 1, 1982.

Rehearing Denied Oct. 6, 1982.

William B. Terry, Las Vegas, Nev., for defendant-appellant.

Edward R. J. Kane, Asst. U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before FLETCHER, FERGUSON and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Henderson appeals from his convictions for interference with a flight crew, a violation of 49 U.S.C. § 1472(j), and assault aboard an aircraft, a violation of 18 U.S.C. § 113. We note jurisdiction under 28 U.S.C. § 1291. Henderson contends that there was insufficient evidence to support the district court's finding that his conduct aboard the airplane was caused by his voluntary consumption of alcohol. We agree, and reverse the conviction.

*Factual Background*

On April 8, 1980, Henderson left Charleston, West Virginia en route for Los Angeles, California. He was driven to the Charleston airport by his mother at whose house he had been staying. Henderson's mother testified that her son seemed tense, nervous, and highly upset before he left Charleston.

While in the Charleston airport, Henderson had two or three beers. Henderson's flight from Charleston terminated in Pittsburgh, Pennsylvania. He then boarded a Trans World Airline non-stop flight to Los Angeles.

Henderson was seated in the coach section of the plane. The stewardess who observed Henderson when he boarded testified that he did not appear intoxicated. Nevertheless, she testified that he was acting strangely, talking to no one and speaking "gibberish."

Henderson was served an alcoholic beverage with dinner. He subsequently became loud and abusive. When he ordered an

additional drink, the stewardess refused to serve him. The captain of the plane was summoned and Henderson agreed to quiet down in exchange for a promised drink.

Approximately twenty minutes later Henderson again requested a drink in a loud and abusive manner. The captain again was summoned. While Henderson and the captain were talking, a passenger, who was walking toward the rear of the plane, was knocked to the floor and repeatedly struck by Henderson. The plane was detoured to Las Vegas where Henderson was removed by local police. Henderson was charged with violating 49 U.S.C. § 1472(j) (interference with a flight crew) and 18 U.S.C. § 113 (assault aboard an aircraft). After being found competent to stand trial, Henderson waived his right to a jury trial.

The Government rested its case after presenting the testimony of witnesses who were aboard the flight. These witnesses testified as to the essential elements of the offenses charged and that Henderson had been drinking alcoholic beverages aboard the plane.

Henderson, who has a history of mental problems including many hospitalizations for treatment, predicated his defense on the fact that he was legally insane during the period he was aboard the plane. Henderson had been institutionalized at the Long Beach Veterans Administration Hospital on and off over a seven year period. His admissions to the hospital were on some occasions voluntary and on others involuntary. For the six years preceding the incident aboard the aircraft, he had been continuously diagnosed as a paranoid-schizophrenic. Two psychiatrists testified on Henderson's behalf. The Government presented a third psychiatrist as a rebuttal witness. The testimony of the psychiatrists is discussed *infra*.

The district court found that, although Henderson was a paranoid schizophrenic, his mental condition prior to the incident was in a state of remission. It further found that Henderson's inability to appreciate the wrongfulness of his conduct was the result of an exacerbation of his mental state due to his consumption of alcoholic beverages in the Charleston airport[1] and aboard the plane, and that absent consumption of the alcoholic beverages Henderson's mental condition would not have deprived him of the ability to appreciate the wrongfulness of his conduct. Relying on *United States v. Burnim*, 576 F.2d 236 (9th Cir. 1978), and *Kane v. United States*, 399 F.2d 730 (9th Cir. 1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969), the district court concluded that the insanity defense was unavailable to Henderson, and found him guilty on both charges.

## ANALYSIS

Henderson argues that there was insufficient evidence to support the district court's finding that absent Henderson's voluntary consumption of alcohol he would have made the trip without incident. In reviewing the district court's finding, we view the evidence in the light most favorable to the Government. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Spears*, 631 F.2d 114, 117 (9th Cir. 1980) (sufficiency test same for jury and bench trials). However, if the evidence was insufficient to prove beyond a reasonable doubt that Henderson was legally sane Henderson's conviction must be reversed. *United States v. Cooper*, 465 F.2d 451, 453 (9th Cir. 1972).

The test for insanity in this circuit is whether a person, as a result of a mental disease or defect lacks substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. *See Wade v. United States*, 426 F.2d 64, 70–72 (9th Cir. 1970) (en banc). Once a defendant introduces evidence that he was not legally responsible for his conduct, the burden is on the

---

1. The district court found that the defendant had consumed alcoholic beverages in the Pittsburgh Airport. However, the only evidence was the defendant's testimony that he had three beers in the airport in West Virginia.

Government to prove beyond a reasonable doubt that the defendant was not insane. *See United States v. Segna,* 555 F.2d 226, 229 (9th Cir. 1977); *Cooper,* 465 F.2d at 453. The Government can sustain its burden either 1) by proving that the defendant could appreciate the wrongfulness of his conduct and conform his conduct to the requirements of the law or 2) by proving that the defendant voluntarily induced his own incapacity.

In the instant case, the district court found that Henderson had a history of mental disease and that he was unable to appreciate the wrongfulness of his conduct aboard the plane. Henderson was nevertheless found guilty because the district court concluded that Henderson's conduct was the result of his voluntary ingestion of alcohol, and not his mental disease. After carefully reviewing the record, we conclude that the Government failed to introduce sufficient evidence to meet its burden of proving that Henderson's *voluntary* ingestion of alcohol caused his lack of capacity aboard the plane.

The leading case in this circuit discussing the availability of the insanity defense to a defendant who has ingested alcohol prior to the commission of the offense is *United States v. Burnim,* 576 F.2d 236 (9th Cir. 1978). In *Burnim,* the defendant was charged with armed robbery. Burnim testified that he needed the money to get married and that he drank a good deal of liquor in order to screw up his courage. *Burnim,* 576 F.2d at 237. His sole defense was insanity.

The district court found that at the time of the offense Burnim suffered from an organic brain defect. Burnim was nevertheless convicted because the district court concluded that Burnim's inability to appreciate the wrongfulness of his conduct stemmed from a combination of the brain defect and alcohol voluntarily ingested, and that absent the alcohol Burnim's mental defect would not have rendered him insane. *Id.* This court affirmed Burnim's conviction because the evidence supported the district court's finding that "Burnim's 'insanity' was the product of his voluntary intoxication, in the absence of which he would not have been insane." *Id.* at 238.[2] *Burnim* does not hold, however, that whenever the Government introduces evidence that the defendant drank alcohol prior to the commission of a crime the insanity defense is unavailable. In order to rely on *Burnim,* the Government must prove that the alcohol, and not the mental disease, actually caused the defendant's mental incapacity when the crime was committed, and that the alcohol was voluntarily ingested.

■ In the instant case the district court applied the *Burnim* test. It disregarded the incapacitating effects of the alcohol Henderson drank prior to boarding and while on board the plane and concluded that Henderson's mental disease, absent the ingestion of alcohol, would not have caused him to commit the crimes charged. Although the testimony of the experts on this point conflicts,[3] there is sufficient evidence to support this finding. However, under *Burnim,* before the incapacitating effects of the alcohol can be disregarded, the Govern-

2. *Burnim* relied heavily on our prior decision in *Kane.* In *Kane* the defendant suffered from a mental condition which when coupled with even a small consumption of alcohol could result in violent conduct. Because Kane knew about his reaction to alcohol and was able to control his initial consumption of alcohol, we held that the insanity defense was unavailable to Kane. 399 F.2d at 735–36. *See also United States v. Shuckahosee,* 609 F.2d 1351, 1355 (10th Cir. 1979).

3. Doctor Bergner testified that Henderson's mental disease and his intake of alcohol could

not be separated. If his testimony stood alone, it would be insufficient to sustain Henderson's conviction under *Burnim* because we could not know whether Henderson could have conformed his conduct to the requirements of the law absent the alcohol. However, Doctor Pike testified that without alcohol Henderson could have conformed his conduct to that required by law. Doctor O'Gorman also was of the opinion that it was Henderson's intake of alcohol that caused Henderson to be unable to appreciate the wrongfulness of his conduct.

ment must also prove that the ingestion of alcohol was voluntary.[4]

■ The only testimony regarding the voluntariness of Henderson's ingestion of alcohol aboard the plane came from Doctor Bergner. He concluded that once aboard the plane Henderson's mental disease was not in a state of remission, and that given Henderson's mental disease at the time he could not control his desire to drink. His conclusion was based on Henderson's medical history,[5] the testimony of the defendant himself, and the testimony of the passengers aboard the plane who observed Henderson prior to the time he began drinking on board.[6] Because the Government introduced no contrary evidence to show that Henderson's drinking aboard the plane was voluntary, the district court's finding of

voluntariness was not supported by the evidence.[7]

The district court also relied in part on Henderson's testimony that he drank two or three beers in the West Virginia airport prior to boarding. Under *Burnim*, if this drinking was voluntary and also contributed to the exacerbation of Henderson's mental state to the extent that he could not control his ability to act, Henderson's conviction must be affirmed. However, the Government has the burden of proving both voluntariness and causation. *See Burnim*, 576 F.2d at 238. *See generally Cooper*, 465 F.2d at 455.

On the issue of causation there was testimony that Henderson did not appear intoxicated when he first boarded the plane. This evidence suggests that the beers that

4. Dictum in *Kane* is not to the contrary. There we noted that even if the defendant had introduced evidence of chronic alcoholism "it is problematical that it would excuse him from criminal responsibility under the present state of the law." 399 F.2d at 736 n.9, citing *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). In *Powell* the Court held that it was not a violation of due process to punish the defendant for being drunk in public where the defendant was a chronic alcoholic. There is no indication, however, that the *Powell* court intended to make the insanity defense unavailable to those who involuntarily consume alcohol because of a mental disease. Justice Marshall, writing for the plurality, emphasized at a number of points in his opinion that the defendant's first drink was a voluntary exercise of his will. *Powell*, 392 U.S. at 518, 525, 526, 88 S.Ct. at 2147, 2150, 2151. In *Kane*, too, the defendant's disability occurred only after he voluntarily began to drink. 399 F.2d at 736. *See also Shuckahosee*, 609 F.2d at 1355–56. If the initial drinking is involuntary, then the resulting mental disability was not brought about by circumstances within the control of the defendant. Conduct which is not subject to the control of the defendant cannot be the basis for criminal liability. *Burnim*, 576 F.2d at 237.

5. Doctor Bergner was a staff psychiatrist at the Long Beach Veteran's Administration Hospital where Henderson had been admitted as a patient twelve times since 1973. Doctor Bergner had treated Henderson personally from July 24, 1980 to August 1, 1980. Doctor Bergner testified that since Henderson had been admitted to the VA hospital he had been diagnosed as a chronic or paranoid schizophrenic. He further testified that a schizophrenic whose ego bound-

ary is slipping responds by either using drugs or alcohol.

6. In addition to the testimony of the stewardess, *see* page 660, *supra*, a passenger seated next to Henderson testified that when she first boarded Henderson was pleasant and cordial. However, during their conversation, and prior to the time he started drinking, Henderson began threatening to harm and kill his mother and sister.

Henderson's testimony also supports the conclusion that Henderson's mental condition began deteriorating prior to the time he was served drinks aboard the airplane. According to Henderson, he had been told by his sister that he would be seated in the first class section of the plane and that he would be entitled to free drinks. Henderson later accused someone on the plane of threatening to kill him.

7. The district court found that Henderson's mental disease was in a state of remission prior to the incident. This implies that Henderson's actions, including his drinking of alcohol, were not caused by his mental disease. However, after reviewing the district court's findings of fact we are uncertain whether the district court related the fact that Henderson's mental disease was in a state of remission to its finding that Henderson's ingestion of alcohol was voluntary. It appears that the former finding was a corollary to the finding that the drinking of alcohol, and not Henderson's pre-existing mental disease, caused Henderson's mental incapacity. To the extent that the district court actually found that Henderson's drinking aboard the plane was not caused by his mental disease, we conclude that the finding was not supported by substantial evidence.

Henderson drank in the airport may not have affected him to any significant degree. However, Doctor O'Gorman testified that Henderson's drinking in the airport could have placed him in a state where he could conduct himself reasonably well, but beyond a certain point would lose control. Thus, Henderson's condition when he first boarded the plane is not inconsistent with the district court's finding that Henderson's ingestion of alcohol in the airport was the cause of his exacerbated mental state. We conclude there is evidence to support the district court's finding in this regard.

Where the Government's case fails, however, is on the proof of the voluntariness of Henderson's ingestion of alcohol in the airport. The only evidence adduced raised some doubt as to whether Henderson could control his desire to drink even in the airport. Henderson's mother testified that her son seemed tense, agitated, and highly upset when he left for Los Angeles. She also testified that he had not been drinking prior to his arrival at the airport. Doctor Bergner testified generally regarding the inability of a paranoid schizophrenic, who is not in a state of remission, to control his need for alcohol and he testified, specifically, that he did not think Henderson could control it.

Given the above evidence the Government was required to present some evidence to rebut the inference that Henderson's airport drinking was in fact involuntary. Instead it introduced no evidence whatsoever on the issue. Under these circumstances, we have no choice but to conclude that the government failed to sustain its burden to prove that the ingestion of alcohol was voluntary.

CONCLUSION

The district court's finding that Henderson could not conform his conduct to law is supported by the evidence. The *Burnim* exception to the insanity defense is a narrow one. *Burnim* did no more than to recognize that in order to constitute a defense, insanity must be the result of circumstances beyond the control of the actor. 576 F.2d at 238. Here, the defense adduced evidence that could support a finding that Henderson's first drink in the airport, and hence the entire ensuing series of events, came about because of circumstances beyond his control. Because the Government failed to introduce any evidence to rebut the evidence that Henderson's drinking was involuntary, the *Burnim* exception to the insanity defense is inapplicable.

Accordingly, Henderson's conviction is REVERSED.