**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Gerald KNOTT,
Defendant–Appellant.**

No. 88–3186.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 30, 1989.

Decided Jan. 26, 1990.

Andrew N. Bates, Asst. Federal Public Defender, Eugene, Or., for defendant-appellant.

Thomas M. Coffin, Asst. U.S. Atty., Eugene, Or., for plaintiff-appellee.

Before WRIGHT, TANG and FERNANDEZ, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We consider here the effect of a defendant's voluntary intoxication and drug use on his insanity defense under the Insanity Defense Reform Act, 18 U.S.C. § 17.

## BACKGROUND

Robert Gerald Knott and his accomplice Jeffrey Frost indulged in a nine-day crime spree that included several kidnappings.

Prior to the kidnappings that are the subject of this case, the pair kidnapped an elderly couple in Nevada, stole the proceeds of their travelers checks, and left them bound and gagged in a motel. Next they kidnapped an elderly man in Oregon, stole his truck, and abandoned him in a forest.

Knott and Frost then proceeded to another town in Oregon where they abducted the husband, wife, and child whose kidnapping we address. They rented a room from the couple and waited for the husband to leave the motel. They then confronted the wife with a gun, stole from the cash box, and forced her and her infant daughter to accompany them to her living quarters. When the husband arrived he was greeted at gunpoint and told the family would be shot if he did not cooperate.

The next day the kidnappers took the hostages to a nearby city and forced them to withdraw money from their bank account. After Knott checked into a motel and learned that he and Frost were wanted by the police, Knott decided to keep the family as hostages. During the several days that they held the couple hostage, Knott repeatedly raped the wife.

Eventually the kidnappers took the family into Washington and abandoned the husband in a remote wooded area. When they later saw a patrol car they panicked, stopped their van, and fled on foot. The wife and daughter escaped during this confusion.

The crime spree ended the following day, when Knott and Frost took yet more hostages. One hostage and Frost were killed during an ensuing shootout with the police.

Knott was indicted on one count of conspiracy to kidnap and three counts of kidnapping in violation of 18 U.S.C. § 1201(a) and (c). In support of his insanity defense, he introduced evidence that he acted irrationally toward his kidnapping victims. He played "Russian roulette" with the couple and with himself. Once he broke down and cried, claiming he wanted only to give up, then stopped and resolved that he was a "warrior" and would die fighting. There was testimony that he drank on several occasions before and during the time he held the family hostage, and snorted and ate an unidentified "white powder."

He timely appeals his conviction following a guilty verdict. We affirm.

## DISCUSSION

Knott argues that the district court erred in refusing to give a proffered instruction on the effect of voluntary intoxication on an insanity defense. He contends also that the court's insanity defense instruction misstated the law.

### A. *Knott's Proposed Instruction*

■ Knott contends that his drinking and drug use in combination with his schizophrenia caused him to be insane when he kidnapped the family.[1] He argues that the

---

1. Knott did not argue to us that he lacked specific intent to kidnap the family. In fact, he specifically informed the court that he eschewed that argument. Nor did he make that argument

court erred by refusing to instruct the jury to consider his voluntary intoxication in determining his insanity at the time of the crime.[2]

This circuit has announced varied approaches to the proper standard of review of a district court's refusal to instruct on a criminal defendant's theory of the case. *See United States v. Sotelo–Murillo*, 887 F.2d 176 (9th Cir.1989). In some cases we have required de novo review, *United States v. Doubleday*, 804 F.2d 1091, 1093 (9th Cir.1986), *cert. denied*, 481 U.S. 1005, 107 S.Ct. 1628, 95 L.Ed.2d 201 (1987) (refusal to give self-defense instruction), while in others we have reviewed for abuse of discretion. *United States v. Lee*, 846 F.2d 531, 534 (9th Cir.1988) (refusal to give entrapment instruction).

Here, as in *Sotelo–Murillo*, we need not resolve the question of the proper standard of review. A defendant is entitled to an instruction on his theory of the case if it is supported by law and has some foundation in the evidence. *United States v. Lesina*, 833 F.2d 156, 160 (9th Cir.1987). Under either standard Knott is not entitled to his proposed instruction because it has no legal support.

The Insanity Defense Reform Act of 1984 (the Act) governs an insanity defense to a federal crime. 18 U.S.C. § 17. Under that Act, the defendant has the burden of establishing the defense by clear and convincing evidence, § 17(b), and must meet the statute's two-prong test. First, he must establish that he suffered from a serious mental disease or defect at the time of the crime. § 17(a). Second, his mental disease or defect must have prevented him from appreciating the nature and quality or wrongfulness of his acts. § 17(a); *United States v. F.D.L.*, 836 F.2d 1113, 1117 (8th Cir.1988).

Here, Knott has the burden of establishing that he was insane when he kidnapped the family. The parties agree that his schizophrenia is a serious mental disease that satisfies the first prong of the test.

However, in this instance, his mental condition alone is insufficient to satisfy the second prong of the test. To satisfy it, he must show that as a result of his mental disease he was unable to appreciate the nature and quality of his acts. § 17(a). He does not maintain that his schizophrenia per se satisfies the second prong. Nor does he argue that his involuntary intoxication satisfies it.[3]

Instead, he contends that the combination of his schizophrenia and his voluntary use of intoxicants met the second prong of the test. We disagree.

Although the issue we address here is not the validity of an insanity defense based on voluntary intoxication alone, we are instructed by Congress's statements about voluntary intoxication. Prior to the Act, a majority of courts followed the rule that the mental effects of voluntary intoxication did not excuse responsibility for a criminal act. *Springer v. Collins*, 586 F.2d 329, 333–34 (4th Cir.1978), *cert. denied*, 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979). The legislative history demonstrates Congress's intent to carry this rule forward. It states that "the voluntary use

---

before the district court. He withdrew his proposed instruction regarding the effect of voluntary intoxication on the element of specific intent. Because he has not argued that he lacked the specific intent to commit the crime, we do not consider the relationship between voluntary intoxication and specific intent.

**2.** Knott's proposed "Substance Abuse/Insanity" instruction read:

You may consider the defendant's voluntary substance abuse in combination with defendant's mental disease in determining whether or not the defendant was unable to appreciate the nature and quality of his acts or was unable to appreciate the wrongfulness of his acts. Substance abuse or voluntary intoxi-

cation is one factor in throwing light upon the mental condition of the accused at the time of the alleged offense. You may find that the defendant was insane at the time of the alleged conduct as a result of his severe mental disease in combination with his substance abuse or voluntary intoxication.

**3.** We need not consider the effect of involuntary intoxication on the insanity defense. There was no evidence of involuntary intoxication and Knott did not request an instruction to that effect. *See Kane v. United States*, 399 F.2d 730, 735 (9th Cir.1968), *cert. denied*, 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969).

of alcohol or drugs, even if they render the defendant unable to appreciate the nature and quality of his acts, does not constitute insanity...." S.Rep. No. 225, 98th Cong., 1st Sess. 222 at 229 (1983).

When we combine Congress's statements about voluntary intoxication with its clear intent to narrow the common law definition of insanity, *id.* at 222, we are persuaded that voluntary intoxication combined with a mental disease will not support an insanity defense under the Act. To agree with Knott's contention would broaden the defense, contrary to this legislative intent.

We are further persuaded by a principle that runs throughout the insanity defense, from its origin in *M'Naghten's Case,* 10 Cl. & F. 200, 8 Eng. Rep. 718 (1843), through its American Law Institute evolution. A mental disease or defect must be beyond the control of the defendant if it is to vitiate his responsibility for the crime committed. *See United States v. Henderson,* 680 F.2d 659, 662–63 (9th Cir.1982); *United States v. Burnim,* 576 F.2d 236, 237 (9th Cir.1978); *Kane,* 399 F.2d at 736. Insanity that is in any part due to a defendant's voluntary intoxication is not beyond his control.

Although neither the statute nor its history directly addresses this combination argument, this circuit has considered it. In *United States v. Burnim,* we determined that when considering an insanity defense, the court must "disregard whatever incapacitating effects were attributable to the voluntary ingestion of alcohol." 576 F.2d at 237. *Burnim* involved a defendant with an organic brain defect who voluntarily became intoxicated and robbed a bank. *Id.* The court found that at the time Burnim committed the robbery he lacked the sub-stantial capacity to appreciate the moral wrongfulness of his conduct. *Id.*

However, Burnim's insanity was due not to the organic brain defect alone, but to the combination of the defect and his voluntary intoxication. *Id.* Thus, his insanity was not caused by factors beyond his control and he was not entitled to the defense. *Id.* at 237–38; *see also Kane,* 399 F.2d at 734–36 (defendant who was schizophrenic and susceptible to pathological intoxication was considered "sane but vulnerable", and remained responsible for actions when insanity was caused in part by voluntary intoxication).

Knott's argument places him in an identical position to the defendants in *Kane* and *Burnim.* Voluntary intoxication may not be considered in determining an insanity defense. To allow it under the Act when common law precluded it would broaden rather than narrow the insanity defense. We refuse to do this.

Knott argues that *United States v. Henderson,* 680 F.2d 659 (9th Cir.1982), limited *Burnim.* We disagree. The court there reaffirmed the *Burnim* rule. It found *Burnim* inapplicable, however, because it concluded that Henderson's mental disease compelled him to drink and his intoxication therefore was involuntary.[4]

Only one case in this circuit gives a hint of support to Knott's theory. *United States v. Hartfield,* 513 F.2d 254 (9th Cir. 1975).[5] In *Hartfield,* part of the evidence the defendant wanted to introduce dealt with involuntary intoxication. *Id.* at 256. The testimony sought to be introduced included hospital records indicating Hartfield was "hospitalized for about one week, that he stated he had possibly been given some

---

4. *Henderson* was decided prior to the federal statute. Under the law at that time, if the defendant raised an insanity defense, the government had to prove sanity beyond a reasonable doubt. 680 F.2d at 661–62. The government failed in *Henderson* to prove that his intoxication was voluntary. It no longer has this burden. The Act shifts the burden of proof from the government to the defendant, who must prove his insanity by clear and convincing evidence. 18 U.S.C. § 17(b).

5. Knott also relies on a second circuit case, *United States v. Torniero,* 735 F.2d 725 (2d Cir. 1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985), which stated in dictum that substance abuse could be used as a basis for the insanity defense if it brought about actual insanity. *Id.* at 733. However, the court there merely looked to substance abuse as a starting place to analyze compulsive gambling, and did not clarify whether it was considering voluntary or involuntary intoxication. We do not find *Torniero* persuasive.

LSD in something to drink, that he was admitted as a victim of a possible drug overdose, and that during the evening of the day of his admission he began to suffer hallucinations." *Id.* The court concluded that proof of the defendant's drug intoxication should have been admitted on the issue of insanity. *Id.* at 259. Knott construes the case to mean that voluntary intoxication could be considered in an insanity defense. We do not agree.

We understand *Hartfield* to apply only to involuntary intoxication for there was no evidence that Hartfield voluntarily used drugs or alcohol. Reading the case as Knott suggests would allow an insanity defense based on voluntary intoxication. Such a result would be an aberration of insanity defense law in this and other circuits. *See Burnim,* 576 F.2d at 237–38; *United States v. Shuckahosee,* 609 F.2d 1351 (10th Cir.1979), *cert. denied,* 445 U.S. 919, 100 S.Ct. 1283, 63 L.Ed.2d 605 (1980); *Springer,* 586 F.2d at 333–34. Consequently, we conclude that *Hartfield* has no application here because there was no evidence in this case that Knott's alcoholic consumption was involuntary.

We hold that under the Insanity Defense Reform Act, the defendant's voluntary drug use or intoxication at the time of the crime may not be considered in combination with his mental disease or defect in determining whether the defendant was unable to appreciate the nature and quality or wrongfulness of his acts.

Because we conclude that the law does not support Knott's theory of the case, we do not reach the question whether it has some foundation in the evidence.

## B. *The Court's Instructions*

■ We read jury instructions as a whole to determine their adequacy, *United States v. Burgess,* 791 F.2d 676, 680 (9th Cir.1986), and review them for abuse of discretion. *United States v. Yarbrough,* 852 F.2d 1522, 1541 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988).

Following the rule in *Burnim,* the court here correctly instructed the jury:

The effects of the voluntary use of drugs or alcohol do not constitute, nor may they legally give rise to a severe mental disease or defect. The voluntary use of drugs or alcohol also must be disregarded in determining whether the defendant could appreciate the nature and quality of his acts or the moral wrongfulness of his acts. However, if you find that at the time in issue the defendant had a severe mental disease or defect and that the disease or defect gave rise to an inability to appreciate the nature or quality or moral wrongfulness of his acts, then the defendant's subsequent consumption of drugs or alcohol, whether voluntary or involuntary, cannot preclude his defense of insanity.

Knott complains that the last sentence of that instruction deprived him of his insanity defense. He contends that the negative inference of the last sentence was that any intoxication *prior to* the crime *precluded* his defense. He argues that the jury mistakenly could have determined that, although he was insane due solely to his schizophrenia, his drinking prior to the kidnapping prevented him from establishing an insanity defense.

A plain reading of the instruction does not support his theory. The instruction provides essentially that if a defendant claims he became insane because he voluntarily ingested alcohol, the defense is not available to him. On the other hand, if he is already insane and drinks alcohol, the defense is not taken from him. Read in context, the last sentence was plainly ameliorative of Knott's subsequent behavior, and assured that the jury would not strip him of his defense simply because it found that he became intoxicated at some point. The court's instructions adequately stated the law. *See Burnim,* 576 F.2d at 237.

AFFIRMED. We vacate sua sponte the special assessment. *See Shah v. United States,* 878 F.2d 1156, 1163 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989); *United States v. Munoz–Flores,* 863 F.2d 654 (9th Cir.1988),

**1124–1128** 

cert. granted, —— U.S. ——, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989).