**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAMON K. FISHER,

Defendant-Appellant.

No. 07-6161
(D.C. No. 5:CR-06-161-1-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

Damon K. Fisher appeals his convictions for being a felon in possession of a firearm and for possessing a stolen firearm. He argues that the district court erred in (1) giving the jury an instruction that limited his insanity defense, and (2) not instructing the jury of the consequences of a not-guilty-by-reason-of-insanity verdict. We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Fisher suffers from several anxiety disorders, for which he has been prescribed the benzodiazepine drug Klonopin. He has used that drug with varying degrees of continuity since 1989. In January 2006, Fisher obtained a 60-day prescription for Klonopin. But in late March or early April 2006, his medication ran out and he allegedly went into withdrawal. He tried to alleviate the symptoms by drinking alcohol, which provided temporary relief.

On April 5, Fisher and his girlfriend bought "a pint of gin or vodka" and a "12-pack of beer" and began drinking. R., Tr. of Jury Trial, Vol. II at 140. Fisher also obtained 100 tablets of another benzodiazepine drug, Xanax, from Gary Knight, an acquaintance with whom Fisher played guitar. Fisher had been to Knight's home several times.

Late in the evening of April 5, Deputy Lynn Edwards was investigating a violation of Oklahoma's "statewide burn ban." *Id.* at 118. A mattress was on fire in a pit behind a trailer home. Deputy Edwards contacted the occupants of the home, Fisher and his girlfriend, who were in the midst "of an intimate moment." *Id.* at 119. Fisher admitted responsibility for the fire and offered to put it out. But he gave Deputy Edwards a false name and said he did not have a driver's license. According to Deputy Edwards, Fisher appeared coherent and not in any sort of distress. When Deputy Edwards returned to his patrol car to check for outstanding warrants, Fisher, who had a warrant for violating his probation, fled

-2-

on foot into the woods. According to Fisher's girlfriend, Fisher knew of the warrant's existence.

Fisher emerged a "couple of miles" away, near Knight's home. *Id.* at 255. Knight was away at the time and had left the house unlocked. Fisher went inside, drank some wine, and took two valuable guitars, a shotgun, two knives, two hats, and some change. He loaded the items into Knight's pick-up truck and drove back to the trailer home. By this time, sheriff's deputies had gone. There, Fisher retrieved his personal belongings and loaded them, along with Knight's property, into his own truck. He also told his girlfriend that he was leaving town and to not call Knight about his truck, which now had a flat tire, until after he (Fisher) was gone.

When Knight realized that his home had been burglarized and that his truck had been stolen, he alerted law enforcement that he suspected Fisher. Deputy Sheriff John Rose spotted Fisher driving his truck toward the interstate. Fisher was not swerving or driving erratically. Deputy Rose followed him for ten or fifteen minutes before pulling him over. Fisher was handcuffed and placed in the back seat of Deputy Rose's patrol car. According to Deputy Rose, Fisher was acting normally and boasted how he had eluded deputies when he fled into the woods. While he was being transported to the Oklahoma County Jail, which took about thirty minutes, Fisher neither complained about his physical condition nor displayed any problems. At the jail, Fisher "was able to ambulate without any

difficulty," and he denied "having any mental health difficulty." *Id.*, Vol. III at 423.

As a result of Fisher's possession of Knight's shotgun, the government indicted Fisher for being a felon in possession of a firearm and for possessing a stolen firearm. At trial, Fisher's defense was that he was insane due to Klonopin withdrawal at the times he possessed Knight's shotgun. Dr. William Morton, a pharmacist, testified in support of the defense. He testified that the abrupt cessation of Klonopin can cause numerous problems, including restlessness, agitation, sweating, nausea, shaking, dizziness, sensitivity to light, hallucinations, paranoia, and seizures. He also indicated that severe Klonopin withdrawal would manifest itself through seizures, psychosis, and "excessive physical symptoms." *Id.* at 333. Based on Fisher's medical records and interviews with Fisher, Dr. Morton concluded that he "was in severe Klonopin withdrawal" from April 5 to April 10. *Id.* at 334. But Dr. Morton also opined that the Xanax taken by Fisher on April 5 "would have reduced some of his withdrawal," *id.* at 345, and that the alcohol he consumed would have "pushed off some of his withdrawal symptoms," *id.* at 348.

Dr. Alyssa Miller, a forensic psychologist, testified in rebuttal for the government. She stated that when she interviewed Fisher, he said that the Xanax and alcohol he ingested on the date of the offense "shut down the withdrawal symptoms." *Id.* at 419; *see also id.* at 426. She also discounted the severity of

-4-

any withdrawal, given that he exhibited "purposeful, goal-directed behavior." *Id.* at 421.

Fisher testified in his own defense. He claimed that he had no memory of anything that happened from when he entered Knight's home and drank the wine to the day after his arrest. He also admitted that he knew Klonopin withdrawal could be severe and that he had experienced Klonopin withdrawal in the past. According to Fisher, when he ran out of Klonopin on the last day of March or the first day of April, his withdrawal was so severe that he could not leave home or drive his vehicle because he "was shaking too bad." *Id.*, Vol. II at 244.

The district court gave the jury our circuit's pattern insanity instruction. Over the defense's objection, however, the district court also instructed the jury that Fisher could not claim insanity if his "condition was produced by [his] voluntary failure to take a prescription drug or [his] voluntary failure to obtain a prescription renewal and . . . that [he] knew that that failure would produce [his] condition." R., Pleadings, Doc. 59 at 27. Additionally, the district court refused to give Fisher's instruction describing the consequences of a not-guilty-by-reason-of-insanity verdict. The jury found Fisher guilty on both counts, and he was sentenced to fifteen years' imprisonment.

Fisher now appeals the district court's jury instruction that limited his insanity defense and the district court's refusal to give his jury instruction.

## DISCUSSION

### I. Limiting Insanity Instruction

"We review de novo a jury instruction when an objection is made at trial, and ask whether the jury, viewing the instructions as a whole, was misled." *United States v. Eads*, 191 F.3d 1206, 1211 (10th Cir. 1999) (citation omitted). An erroneous instruction requires a new trial unless it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999) (quotation omitted).

To use insanity as a defense to federal prosecution, the defendant must show by clear and convincing evidence that he suffered from a "severe mental disease or defect" that rendered him "unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a). Fisher argues that the district court's limiting instruction exceeded Congress's intent for an insanity defense. He claims that, in addition to the statutory elements, he had to prove that his failure to take Klonopin or to renew his prescription was involuntary and that he was unaware of the consequences of not taking Klonopin. Further, he claims that he was not given sufficient notice that he would be burdened with proving those additional elements. Lastly, he maintains that the instruction would create an affirmative duty to take prescription medication.

There is a dearth of case law concerning the circumstances under which a defendant's alleged withdrawal from prescription medication might support an

insanity defense. The government urges affirmance based on the established principle that "the voluntary use of alcohol or drugs" will not support an insanity defense. *See United States v. Knott*, 894 F.2d 1119, 1121-22 (9th Cir. 1990) (quotation omitted); *see also United States v. Garcia*, 94 F.3d 57, 61-62 (2d Cir. 1996). But we are not faced with voluntary intoxication; rather, we have the flip side of the coin—failure to take a prescription drug with the knowledge that there may be severe mental and physical consequences from withdrawal. We need not decide whether or when such a withdrawal will support an insanity defense, because even assuming that insanity can be raised on the basis of withdrawal and that the district court erred in giving its limiting instruction, there is overwhelming evidence that Fisher was not suffering from withdrawal so severe as to render him insane at the times he possessed Knight's shotgun. *Cf. United States v. Long Crow*, 37 F.3d 1319, 1324 (8th Cir. 1994) (affirming district court's refusal to instruct on insanity because there was no evidence that defendant's post-traumatic stress disorder was severe); S. Rep. No. 98-225, at 229 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3411 (explaining that the term "severe" is intended to exclude from the defense "non-psychotic behavior disorders or neuroses such as an inadequate personality, immature personality, or a pattern of antisocial tendencies" (quotation omitted)). Indeed, from the time Fisher's intimate moment was interrupted by law enforcement to when he was arrested after fleeing in his vehicle, Fisher failed to demonstrate the symptoms he

and his expert indicated were associated with any sort of Klonopin withdrawal. Both deputies testified that Fisher was not shaking or sweating excessively and did not appear to be dizzy, agitated, or confused. Further, Fisher's actions of fleeing into the woods, evading deputies, locating Knight's home, taking valuable property and a weapon, returning to the trailer home to retrieve personal belongings, transferring the stolen property from Knight's vehicle—which had a flat tire—into his own vehicle, and then fleeing in his vehicle, show a person intent on avoiding arrest rather than a person suffering from severe Klonopin withdrawal. Finally, Fisher admitted to Dr. Miller that he had succeeded in "shut[ting] down" his withdrawal by drinking alcohol and taking Xanax. R., Tr. of Jury Trial, Vol. III at 419. Even Fisher's expert opined that ingesting those substances would have lessened the withdrawal.

Consequently, because the evidence clearly established that Fisher was not in withdrawal so severe as to render him "unable to appreciate the nature and quality or the wrongfulness of his acts" when he possessed Knight's shotgun, *see* 18 U.S.C. § 17(a), any error in the district court's limiting instruction was harmless beyond a reasonable doubt.[1]

---

[1] The government does not expressly argue that the district court's error, if any, was harmless. We may nonetheless address harmless error sua sponte, as the record before us is not lengthy or complex, the harmlessness is not debatable, and a retrial would be futile. *See Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006).

II.  Consequences of a Not-Guilty-By-Reason-of-Insanity Verdict

We "review the district court's refusal to give a particular jury instruction for abuse of discretion." *United States v. Sims*, 428 F.3d 945, 958 (10th Cir. 2005) (quotations and citation omitted).  Fisher concedes that a district court is generally not required to instruct the jury about the consequences of a not-guilty-by-reason-of-insanity verdict.  *See Shannon v. United States*, 512 U.S. 573, 587 (1994).  Nevertheless, he argues that "the trial court's discretion would have been better exercised in giving the instruction."  Aplt. Br. at 20.  But he does not elaborate on that argument.  And while the district court may instruct the jury on the consequences of a not-guilty-by-reason-of-insanity verdict when a witness or the prosecutor mistakenly tells the jury that the defendant would go free if found not guilty by reason of insanity, *see Shannon*, 512 U.S. at 587, that mistake did not occur here.  Accordingly, we conclude that the district court did not abuse its discretion by not instructing the jury about the consequences of a not-guilty-by-reason-of-insanity verdict.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

-9-