**Eugene Edward MOORE, Petitioner,**

v.

**Teri GONZALEZ, Warden, Respondent.**

**Case No. CV 11–7175–SVW (MLG).**

United States District Court,
C.D. California,
Western Division.

Dec. 5, 2012.

Eugene Edward Moore, Norco, CA, pro se.

Julie Ann Harris, CAAG—Office California Attorney General, Los Angeles, CA, for Respondent.

## ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

STEPHEN V. WILSON, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the Petition, the records on file and the Report and Recommendations of the United States Magistrate Judge. The Court has also conduct-

ed a *de novo* review of those portions of the Report and Recommendations to which Petitioner has objected. The Court accepts the findings and recommendations of the Magistrate Judge.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

MARC L. GOLDMAN, United States Magistrate Judge.

## I. Background

### A. Procedural History

This is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. On January 19, 2010, Petitioner Eugene Edward Moore was convicted by a Los Angeles Superior Court jury of petty theft with a prior (Cal. Penal Code § 666) and second degree burglary (Cal. Penal Code § 459). The trial court found that Petitioner had served six prison terms within the meaning of Cal. Penal Code § 667.5 and that he had a prior conviction which qualified as a second strike within the meaning of California's Three Strikes Law (Cal. Penal Code §§ 1170.12(a)–(d), 667(b)–(i)). (Lodgment 1 at 386.) On February 9, 2010, Petitioner was sentenced to a prison term of eight years, eight months. (Lodgment 1 at 389).

Petitioner filed both a direct appeal[1] and a petition for writ of habeas corpus, which were considered concurrently by the California Court of Appeal. (Lodgment 4.) In his habeas petition, Petitioner asserted that because he had entered a dual plea of not guilty and not guilty by reason of insanity, the trial court's failure to hold a "sanity proceeding" pursuant to Cal. Penal Code § 1026(a) violated his statutory and constitutional rights. (Lodgment 3.) On January 20, 2011, 2011 WL 169401, the court of appeal affirmed Petitioner's conviction and denied the petition for writ of habeas corpus in a written opinion on the merits. (Lodgment 5.) On February 24, 2011, Petitioner filed a petition for review in the California Supreme Court, which was denied on March 30, 2011. (Lodgement 7).

On August 30, 2011, Petitioner filed the current petition for writ of habeas corpus, raising the same claims regarding the lack of a sanity proceeding that he had presented in state court. Respondent filed an answer on November 23, 2011, and Petitioner has filed a reply.

### B. Facts

The underlying facts, which are supported by the trial record, are taken from the unpublished opinion of the California Court of Appeal. *People v. Eugene Edward Moore*, No. B227782, 2011 WL 169401 (Cal.App. 2nd Dist., Jan. 20, 2009) (Lodgment 6).

On the evening of January 13, 2009, James Espinoza was working as a loss prevention officer for a Rite Aid store in Pomona. Espinoza saw Petitioner, who was wearing a black "puffy" jacket, enter the store and walk to the aisle where shampoos and lotions are displayed. Moore "grabbed" some shampoo, placed it in his jacket, then shook it so that it went down into his sleeve. Petitioner did this with several products, including body wash, shampoo, and toothpaste. After placing these items in his jacket, Petitioner walked out of the store without paying for the merchandise.

While Petitioner was placing the items in his jacket, Espinoza called the police. By the time Petitioner had left the store

---

**1.** Petitioner's counsel filed only a "Wende" brief in his direct appeal, which raised no issues and requested that the court of appeal conduct an independent review of the record. (Lodgment 5 at 15.)

and walked across the street into a parking lot, police officers had arrived.

Pomona Police Officer Daniel Gomez was one of the officers who responded to Espinoza's call. As he was driving to the store, he received a description of Petitioner and was told that he was walking across the street toward the 99 Cent Store parking lot. As he drove into the lot, Gomez saw Petitioner. He stopped, got out of his patrol car, and had Petitioner sit on the curb while he waited for a back-up officer to arrive. While he was waiting, Gomez observed that Petitioner did not appear to be under the influence of narcotics or alcohol. Pomona Police Officer Joe Dolgovin soon arrived at the scene as well.

When Dolgovin and Gomez conducted a pat-down search for weapons, the officers found no money on Petitioner. However, Dolgovin "located several items which appeared to be concealed in Petitioner's left jacket sleeve." Dolgovin removed the items, which included toothpaste, shampoo, and body wash. The items were placed on the hood of a patrol car and photographed.

A short time later, Espinoza came to the parking lot where Petitioner was being held and identified Petitioner as the man he had seen taking items from the shelves at Rite Aid. He confirmed that the items removed from Petitioner's jacket were those he had seen Petitioner take from the store.

Petitioner was then handcuffed and placed in Dolgovin's patrol car. As he was being escorted to the car, Petitioner first told Dolgovin that he had not been to the Rite Aid store; he had been visiting a friend in the 99 Cent Store. He then told Dolgovin that he had taken the items from Rite Aid "because he had been homeless for about a week and he smelled and he wanted to clean himself up." Finally, he said to Dolgovin, "Man, we got to work something out." Dolgovin believed that, by making the last remark, Petitioner was "trying to work out a deal by giving [the officer] information into other crimes that he was aware of."

At the station, Dolgovin advised Petitioner of his *Miranda* rights. Petitioner chose to waive those rights and told the officer that he did not have any money and "he just went to the store to take the items that he needed." During his conversation with Petitioner, Dolgovin noted that Petitioner did not show any signs of being under the influence of drugs or alcohol.

Petitioner initially plead "not guilty," but on May 19, 2009, Petitioner, appearing in pro per, informed the trial court that he wished instead to enter a plea of "not guilty by reason of insanity." The trial court stated that it was going to appoint two doctors to evaluate him: Dr. Sanjay M. Sahgal and, at Petitioner's request, Dr. Jack Rothberg. Both doctors evaluated Petitioner and submitted to the court reports finding that Petitioner was sane at the time he committed the crimes charged.

The jury trial began on January 14, 2010. Petitioner, now represented by counsel, presented testimony from two witnesses. Jocelyn Elaine Lemond, Petitioner's former girlfriend, had known Petitioner since 2003 or 2004. When they were together, Lemond saw Petitioner consume "a lot" of alcoholic beverages. In addition, Lemond saw him use cocaine approximately three times per week. Petitioner also suffered from black outs. These frequently occurred after Petitioner had consumed alcohol or drugs. On one occasion, Petitioner blacked out as he was driving. Throughout the five or six years they were together, Lemond saw Petitioner black out approximately 50 times.

Janell Moore is Petitioner's 20–year–old daughter. As she was growing up, Moore saw her father under the influence of alcohol and drugs. Although these episodes were "not so common," when Petitioner drank or used drugs he would frequently

black out. At times, Petitioner would "Flip out ... One minuted he'd be daddy. The next minute he'd be somebody else ... He wouldn't remember the situation that happened." According to Moore, these episodes happened on a daily basis.

Petitioner also testified in his own defense. He stated that he has "had a problem" with drugs and alcohol since his early twenties. In addition, he has "suffered numerous felony convictions" since becoming an adult and has served six prison terms. When he is not in prison he tends to abuse alcohol and drugs.

Petitioner testified that on the evening of January 13, 2009, he had spent approximately two hours drinking with a friend. He had drunk four tall cans of "211's," a drink consisting of approximately 8.5 percent alcohol. In addition, Petitioner had smoked some PCP. He had no recollection of going into the Rite Aid store. He did remember getting some water by a 99 Cent Store, then being approached by a police officer who made him sit down. He could not remember whether or not he had been handcuffed; he was "kind of, like, in and out." He did not recall going to the police station and giving a statement.

Petitioner also testified that he had suffered "a lot of head trauma." When he was three years old, he was involved in a "drowning accident" and "was in a coma for 21 days." Later, he suffered a gunshot wound to the head and was hit in the head with a hammer. As a result of these injuries, Petitioner suffers from seizures. After a seizure, he has no recollection of what happened. According to Petitioner, "Sometimes he just sits there and blacks out." Sometimes he falls. Most frequently, he suffers from seizures where he simply blacks out and cannot remember what happened. That is what happened on the evening he went to the Rite Aid store. Petitioner has "no recollection" of going into the store or taking any merchandise

and "didn't intend to do anything like that."

Among others, the trial court gave the jury the following instructions:

> You have received evidence regarding a ... mental defect of the defendant at the time of the commission of the crimes charged. You should consider this evidence solely for the purpose of determining whether the defendant actually formed the required specific intent which is an element of the crime charged ... If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in deciding whether defendant had the required specific intent. If, from all the evidence, you have a reasonable doubt whether the defendant formed the specific intent, you must find that he did not have the specific intent ... A person who while unconscious commits what would otherwise be a criminal act is not guilty of a crime ... Evidence has been received which may tend to show that the defendant was unconscious at the time and place of the commission of the alleged crime ... If ... you have a reasonable doubt that the defendant was conscious at the time the alleged crime was committed, he must be found not guilty.

(Reporter's Transcript ("RT") at 621–24).

After deliberating for approximately 20 minutes, the jury found Petitioner guilty of petty theft and second degree burglary. A separate proceeding to determine petitioner's sanity was never held.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas corpus relief is available to state prisoners who are in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To establish a right to relief, a

petitioner must show that the state's highest court rejected the petitioner's claim on the merits, and that this rejection was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 783–84, 178 L.Ed.2d 624 (2011).

■ It is not enough that a federal court conclude "in its independent judgment" that the state court decision is incorrect or erroneous. *Yarborough v. Alvarado,* 541 U.S. 652, 665, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24–25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)). "The state court's application of clearly established law must be objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *see also Renico v. Lett,* 559 U.S. 766, 130 S.Ct. 1855, 1865, 176 L.Ed.2d 678 (2010). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005) (quoting *Woodford,* 537 U.S. at 24, 123 S.Ct. 357); *Vasquez v. Kirkland,* 572 F.3d 1029, 1035 (9th Cir.2009).

■ Habeas relief is unavailable if "fairminded jurists could disagree" about the correctness of the state court decision. *Richter,* 131 S.Ct. at 786 (quoting *Yarborough,* 541 U.S. at 664, 124 S.Ct. 2140)

(internal quotation marks omitted). For habeas relief to be granted, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter,* 131 S.Ct. at 786–87.

■ The claims raised in the Petition were presented to the California Supreme Court, but that court did not issue a reasoned decision. (Lodgment 7.) In this circumstance, the Court must "look through" the unexplained California Supreme Court decision and apply the AEDPA analysis to the last reasoned decision by a lower court. *Ylst v. Nunnemaker,* 501 U.S. 797, 803–06, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Delgadillo v. Woodford,* 527 F.3d 919, 925 (9th Cir.2008). The California Court of Appeal, in a reasoned opinion on the merits, rejected the claims presented here. (Lodgment 5.) Therefore, this Court will consider the reasoning of the California Court of Appeal to determine whether the California Supreme Court's decision is contrary to, or an unreasonable application of, clearly established federal law.

### III. Failure to Conduct a Separate Sanity Hearing

■ Prior to trial, Petitioner entered a dual plea of not guilty and not guilty by reason of insanity. Under California law, when a defendant enters such a plea, the issue of guilt is tried first in an initial trial and if the jury returns a guilty verdict in that trial, the issue of sanity is determined in a separate proceeding. (Cal. Penal Code § 1026(a).)[2] As noted, Petitioner

---

**2.** Cal. Penal Code § 1026(a) provides, in relevant part: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, the defendant shall first be tried as if only such other plea or pleas had been entered, and in that trial the defendant shall be conclusively presumed to

have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty ... then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried, either before the same

contends that the trial court's failure to conduct a separate sanity proceeding following the guilt phase of his trial violated his Fourteenth Amendment right to due process of law and his Sixth Amendment rights to a fair trial and to present a defense. (Pet. at 5–6). However, the state court's rejection of this claim was neither contrary to, nor an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d).

In rejecting Petitioner's claim of error, the California Court of Appeal found that "apart from whether the trial court erred in failing to hold a 'sanity' hearing after the jury found [Petitioner] guilty of petty theft and burglary, [Petitioner] suffered no prejudice." (Lodgment 5 at 16). In reaching this conclusion, the court of appeal explained that both of the psychiatrists who evaluated Petitioner had determined that Petitioner was sane at the time he committed the charged crimes. (*Id.*) Additionally, there was "evidence that the jury, were it to have considered [Petitioner's] sanity, would have rejected the notion that he was insane at the time he committed the charged offenses." (*Id.* at 17–18). Namely, the jury had found Petitioner guilty even after receiving instructions to consider evidence regarding Petitioner's "mental defect" in determining whether he formed the required specific intent. (*Id.*) Therefore, the trial court's failure to hold a separate sanity hearing caused Petitioner no harm.

■■■ To the extent Petitioner is claiming that the trial court violated California state law in failing to hold a sanity hearing, this argument fails to state a cognizable federal habeas corpus claim. A federal court may issue a writ of habeas corpus only on the ground that the Petitioner is in custody in violation of the Constitution or laws of the United States. *Wilson v. Corcoran,* 562 U.S. ——, 131 S.Ct. 13, 15, 178 L.Ed.2d 276 (2010) (per curiam) (quoting 28 U.S.C. § 2254(a)); *see also Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[f]ederal habeas corpus relief does not lie for errors of state law") (citing *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

The court of appeal did not specifically address whether the failure to hold a sanity hearing constituted a violation of Petitioner's federal constitutional rights, but rather found that regardless of any error, the failure to hold the hearing was harmless. (Lodgment 5 at 17–18). To obtain relief, Petitioner must show that the state court's decision was an "unreasonable application of clearly established Federal law." *Richter,* 131 S.Ct. at 783–84.

Yet the right of a defendant who has plead insanity to a separate proceeding on the issue of sanity has not been clearly established under federal law.[3] Rather, courts considering the issue have found that a state court's failure to hold a separate sanity proceeding does not violate due process. *See, e.g., Pennywell v. Rushen,* 705 F.2d 355, 357–58 (9th Cir.1983) (finding that Petitioner had not shown that the denial of a separate trial on his insanity plea violated due process); *Murphy v. State of Florida,* 495 F.2d 553, 557 (5th Cir.1974) ("Due process does not require a separate trial and the states and their courts are free to determine whether such

jury or before a new jury in the discretion of the court. In that trial, the jury shall return a verdict either that the defendant was sane at the time the offense was committed or was insane at the time the offense was committed . . .".

**3.** Neither party has presented the Court with any Supreme Court precedent addressing the issue of whether a separate trial to determine sanity is ever constitutionally required, and the Court's own research has not revealed any.

issues should be tried separately or together"). In *Pennywell,* the Ninth Circuit found no due process violation when "the record show[ed] that [the petitioner] received full consideration of the facts underlying his insanity claim" during the trial to determine guilt. 705 F.2d at 357–58.

As in *Pennywell,* here the principal facts underlying Petitioner's insanity claim were introduced at trial and received full consideration by the jury. Two witnesses, Petitioner's former girlfriend and his twenty-year-old daughter, both testified that Petitioner suffered from black outs and seizures, and that after such incidents he would not remember what had occurred. (RT at 385–93, 395–98.) They also testified that he consumed drugs and alcohol. Testifying in his own defense, Petitioner stated that on several occasions he suffered significant head trauma, and that as a result of these injuries he experiences seizures and black outs. (RT at 412–14). He also has had problems with drugs and alcohol since his early twenties. He testified that on the evening of January 13, 2009, he had consumed alcohol and PCP. (RT at 410–11.) He had no recollection of going to the Rite Aid store or taking the merchandise, and believes he was experiencing one of his black outs at the time. (RT at 411–14). Prior to deliberations, the trial court instructed the jury that they should consider the evidence regarding Petitioner's mental defect for the purpose of determining whether Petitioner actually formed the required specific intent element of the crime charged. (RT at 621–24). Because Petitioner was able to introduce much of the evidence that would have supported his insanity claim and the jury was instructed to consider whether it prevented him from forming the requisite intent, Petitioner's due process rights were not violated by the absence of a separate sanity hearing. *See Pennywell,* 705 F.2d at 357–58.

■ Similarly, Petitioner's Sixth Amendment jury trial rights were not violated by the absence of a separate sanity hearing. "Federal law does not mandate jury consideration of insanity every time an [not guilty by reason of insanity] plea is entered." *Pennywell,* 705 F.2d at 357, n. 1; *see also, Severance v. Evans,* 2009 WL 1705698, at *8 (E.D.Cal. June 17, 2009) (quoting *People v. Hernandez,* 22 Cal.4th 512, 529, 93 Cal.Rptr.2d 509, 994 P.2d 354 (2000)) (Brown, J., concurring) ("taking the issue of insanity away from the jury does not violate the United States or California Constitutions"). Rather, "[a] defendant first must place his sanity in issue by introducing evidence to show that he is not legally responsible for his acts." *Pennywell,* 705 F.2d at 357, n. 1 (citing *United States v. Henderson,* 680 F.2d 659, 661–62 (9th Cir.1982)). Here, Petitioner had not introduced such evidence.

■ To the extent Petitioner's claims can be construed as a denial of his right to present a defense, Petitioner has failed to prove that a constitutional violation has occurred. "[T]he Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (internal citations omitted); *see also Moses v. Payne,* 555 F.3d 742, 757 (9th Cir.2009) ("The Supreme Court has indicated that a defendant's right to present a defense stems both from the right to due process provided by the Fourteenth Amendment . . . and from the right 'to have compulsory process for obtaining witnesses in his favor' provided by the Sixth Amendment.") (citations omitted). However, this right is not unlimited, and federal habeas relief is warranted only if the exclusion of favorable defense evidence rendered the trial fundamentally unfair. *See Moses,* 555 F.3d at 757.

Here, an examination of the record reveals no excluded evidence that if included would have fundamentally altered the fairness of Petitioner's trial. As discussed above, at trial Petitioner was permitted to introduce testimony from two lay witnesses about his history of mental problems, including black outs and seizures. He also testified in his own defense about these issues and the fact that he blacked out the night of the crime. While the reports of the two psychiatrists who had evaluated Petitioner were not introduced, both of these reports contained findings that Petitioner was sane at the time he committed the charged crimes. (Lodgment 1 at 3, 6). Given that the reports could only have undermined Petitioner's claim of insanity, their omission did not prevent Petitioner from receiving a fair trial. Additionally, on appeal to the California Court of Appeal, Petitioner argued he had "new evidence" that would undermine the prosecutions' case in the form of state prison records from 2003 and 2004 documenting a history of mental illness. (Lodgment 5 at 18–19). The court of appeal found that "while these 2003 and 2004 records tend to corroborate testimony that [Petitioner] has a history of mental illness and seizures, they do not support his assertion that, on the evening of January 13, 2009, he suffered a 'black out' which rendered him incapable of harboring the intent required to commit the alleged burglary and petty theft." (Lodgment 5 at 19.) The Court agrees that the records do not support the claim that Petitioner was legally insane at the time of the offense, and finds that their omission did not constitute a denial of Petitioner's right to present a defense.

Furthermore, aside from entering an insanity plea prior to trial, it appears that Petitioner made no overt attempt to pursue his insanity defense. After submission of the psychiatric evaluations finding that Petitioner was sane at the time of the offense, Petitioner did not make known to the trial court that, despite the outcome of those evaluations, he continued to wish to present an insanity defense. Nor did Petitioner object to the trial court's failure to hold a sanity hearing prior to sentencing. Petitioner's total failure to actively pursue an insanity defense dooms any argument that he was unconstitutionally denied his right to present such a defense.

Finally, even if the state court's failure to hold a separate sanity hearing or otherwise allow Petitioner to introduce evidence relevant to his insanity plea did rise to the level of constitutional error, any error was harmless given the overwhelming evidence of Petitioner's guilt, including of his specific intent to commit the crime charged. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (trial type error must have had a "substantial and injurious effect" upon the verdict in order to justify federal habeas relief). Here, review of the record does not demonstrate that the trial court's failure to hold a separate sanity proceeding substantially influenced the verdict. Despite receiving evidence regarding Petitioner's "mental defect" and the instruction to consider this evidence when determining whether Petitioner formed the required specific intent, the jury returned a guilty verdict after a short deliberation. (Lodgment 5 at 18). Moreover, the two psychologists who evaluated Petitioner both concluded that he was sane at the time the crime was committed. (Lodgment 1).

Given the overwhelming evidence that Petitioner committed the crime with the requisite intent, any error in failing to conduct a separate sanity hearing cannot be said to have had a substantial and injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 637–638, 113 S.Ct. 1710; *see also Fry v. Pliler*, 551 U.S. 112,

121–122, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV. Conclusion

Petitioner has failed to demonstrate that his claims warrant federal habeas corpus relief, and it is respectfully recommended that the petition be denied.

Dated: December 20, 2011.